## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:12CR353 |
| vs. | |
| JUAN PARTIDA-ORTIZ, | **FINDINGS AND** **RECOMMENDATION** |
| Defendant. | |

This matter is before the court on the defendant Juan Partida-Ortiz's[1] (Partida-Ortiz) Motion to Dismiss Indictment and Suppress Evidence of Prior Removal (Filing No. 30). Partida-Ortiz is charged in the Indictment for knowingly and unlawfully entering the United States without consent from the United States Attorney General or his successor to reapply for admission into the United States. **See** Filing No. 1 - Indictment. Partida-Ortiz filed a brief (Filing No. 42) and indices of evidence (Filing Nos. 44, 47, 49, 51, and 53[2]) in support of the motion. The government filed a brief (Filing No. 65) in response. Partida-Ortiz filed a brief (Filing No. 73) in reply. Partida-Ortiz moves to dismiss the indictment, or suppress evidence of his prior removals, because the administrative removal proceedings and resulting removal orders underlying the indictment were constitutionally, statutorily, and procedurally defective. **See** Filing No. 30 - Motion; Filing No. 42 - Brief.

The court held an evidentiary hearing on Partida-Ortiz's motion on August 21, 2013. Partida-Ortiz was present for the hearing along with his counsel, Ivan Velasco, Jr. The United States was represented by Assistant United States Attorney Frederick D. Franklin. During the hearing, the court heard the testimony of Jason Finch (Mr. Finch), Sandra M. Partida (Sandra), Maria Partida (Maria), Enrique Partida (Enrique), and Partida-Ortiz. The court received into evidence government's exhibits 2 through 17 and defendant's exhibits 101-108, 113-121, 126, 128-131, 133-136, 139, 142-147, and

---

[1] Partida-Ortiz represents his actual name is Jose Juan Partida-Ortiz as reflected on his birth certificate. **See** Filing No. 44-1 - Partida-Ortiz Birth Cert. Partida-Ortiz states the school system in Bakersfield, California, mistakenly transposed his first and middle names therefore recording Partida-Ortiz's name as Juan Jose on official records. **See** TR. 62; **see also** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 5.

[2] Filing Nos. 49 and 53 are exhibits filed under Restricted Access.

150-154.  A transcript of the hearing (TR.) was prepared and filed on August 28, 2013.
**See** Filing No. 76.

## THE INDICTMENT
### COUNT 1

On or about October 29, 2012, in the District of Nebraska, the defendant, JUAN PARTIDA-ORTIZ, an alien who, after having been convicted of a felony, had been denied admission, excluded, deported and removed and who had departed the United States while an order of exclusion, deportation or removal was outstanding, knowingly and unlawfully entered the United States and was found in the District of Nebraska, without first having obtained consent from the United States Attorney General or his successor, the Secretary for Homeland Security (Title 6, United States Code, Sections 202(3), (4) and 557) to reapply for admission into the United States.

It is further alleged that defendant JUAN PARTIDA-ORTIZ was excluded, deported and removed from the United States subsequent to October 16, 2001.

In violation of Title 8, United States Code, Section 1326(a), and subject to sentencing under Title 8, United States Code, Section 1326(b)(1).

**See** Filing No. 1 - Indictment.

## FINDINGS OF FACT

### I.    Birth, Immigration to the United States, and Early Life in the United States

Partida-Ortiz was born in Jamay, Jalisco, Mexico in 1970.  **See** Filing No. 44-1 - Birth Cert.  On or about April 10, 1977, Partida-Ortiz, at the age of six and under the care of an elderly couple, crossed the border from Mexico to the United States to Bakersfield, California, where Partida-Ortiz's father lived and worked.  **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 6; TR. 63.  Partida-Ortiz lived, attended school, and worked in Bakersfield.  **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶¶ 6, 12; TR. 63-64.  On or about September 11, 1989, the Immigration and Naturalization Service (INS) granted Partida-Ortiz lawful permanent resident (LPR) status.  **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 8; TR. 65; Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing ("[Partida-Ortiz] is a male native and a citizen of Mexico, whose status was adjusted to that of a lawful,

2

permanent resident on September 11, 1989. . . ."). Shortly thereafter, Partida-Ortiz received a Social Security Card. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 8; TR. 65; Filing No. 44-2 - Partida-Ortiz's Social Security Card.

In the 1980s, Partida-Ortiz became involved with Pearl Y. Rodela (Pearl) and had their first child, Sandra, in 1990. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 11; TR. 65-66; Filing No. 44-3 - Sandra Birth Cert. In May of 1991, Partida-Ortiz moved to Omaha, Nebraska, with Pearl and Sandra. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶¶ 6, 12; TR. 66-67. From 1991 to 2001, Partida-Ortiz lived in Omaha, Nebraska. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 12; Filing No. 53 - Partida-Ortiz's Aff. of Residential History. After moving to Omaha, Partida-Ortiz and Pearl had three more children: Monica L. Partida (Monica) in 1991, J.J.P. in 1995, and A.P. is 1998. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶¶ 13, 15, and 16; Filing Nos. 44-4, 44-6, and 44-7 - Birth Certs. for Monica, J.J.P, and A.P.; TR. 66-67. Partida-Ortiz and Pearl married on March 16, 1995. **See** Filing No. 44-5 - License and Cert. of Marriage (Issued July 22, 2013).

Partida-Ortiz had a very good relationship with his children between 1990 and 2000. **See** TR. 67. Partida-Ortiz would take his children to school, help them with homework in the evening, and provided structure for them. *Id.* at 68-70. From 1991 to 2001, Partida-Ortiz worked at Greater Omaha Packing, Nebraska Beef, Quality Pork International, Jim Earp Chrysler Plymouth (Jim Earp), and S&W Fence, with the majority of his employment at Jim Earp from 1994 to 2001. *Id.* at 92.

## II.    Conviction and Prison Sentence

In 2001, Partida-Ortiz began using cocaine. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 19; TR. 70. Partida-Ortiz was charged with possession of cocaine in Douglas County, Nebraska. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 19; TR. 70. Partida-Ortiz entered Nebraska Drug Court, but was not able to complete the program successfully. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 19; TR. 70. Subsequently, Partida-Ortiz was placed on probation. **See** Filing No. 51-1 - Partida-Ortiz's Aff. ¶ 19; TR. 70. After violating the terms of his probation, Partida-Ortiz was sentenced on July 24, 2002, to one year imprisonment. **See** Ex. 2 - July 24, 2002, Sentencing Order. Partida-Ortiz served approximately five months at the Nebraska State Penitentiary. *Id.*

3

### III.   Removal from the United States[3]

### A. First Removal - Omaha Proceedings

Shortly after Partida-Ortiz was released from the Nebraska State Penitentiary, on January 15, 2003, INS issued a Warrant for Arrest of Alien (Warrant) for Partida-Ortiz, a Notice of Custody Determination (NCD), and Notice to Appear (NTA).  **See** Filing No. 44-11 - Jan. 15, 2003, INS Warrant; Filing No. 44-12 - Jan. 15, 2003, INS NCD; Filing No. 44-13 - Jan. 15, 2003, NTA.  According to the January 15, 2003, NTA, the INS alleged Partida-Ortiz was admitted to the United States but was deportable because:

> 1) [Partida-Ortiz was] not a citizen or national of the United States;
> 2) [Partida-Ortiz was] a native of MEXICO and a citizen of MEXICO;
> 3) [Partida-Ortiz's] status was adjusted to that of lawful permanent resident on September 11, 1989 under section 245(A) of the Act;
> 4) [Partida-Ortiz was], on April 10, 2001, convicted in the District Court [at] Douglas County NE for the offense of Possession of Controlled Substance, Felony, to wit: Cocaine, in violation of Nebraska Revised Code.

**See** Filing No. 44-13 - Jan. 15, 2003, NTA p. 1, 3.  The INS alleged Partida-Ortiz was subject to removal from the United States based on the following:

> Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.
>
> Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43).

---

[3]  Partida-Ortiz was removed from the United States on two occasions.  **See** Filing No. 44-20 - Jun. 2, 2003, Warrant of Removal/Deportation; Filing No. 44-33 - Jul. 17, 2003, Warrant of Removal/Deportation.  In order to avoid confusion, the court will refer to Partida-Ortiz's first removal as the "Omaha Proceedings" and the second removal as the "Las Vegas Proceedings."

*Id.* The NTA ordered Partida-Ortiz "to appear before an immigration judge of the United States Department of Justice at: [no location] on 'a date to be set' at 'a time to be set' to show why [Partida-Ortiz] should not be removed from the United States. . . ." *Id.* at 2. Included with the NTA was a document providing Partida-Ortiz with a description of hearing before an immigration judge. *Id.* The description provided Partida-Ortiz with notice he had the right to appeal an adverse decision by an immigration judge. *Id.* Partida-Ortiz was personally served with the Warrant, NTA, and NCD at Hastings Correctional Center on February 7, 2003. **See** Filing No. 44-11 - Jan. 15, 2003, Warrant; Filing No. 44-13 - Jan. 15, 2003, NTA p. 2; Filing No. 44-12 - Jan. 15, 2003, NCD; TR. 72-74.

On February 21, 2003, INS filed the January 15, 2003, NTA with the Immigration Court (IC) in Chicago, Illinois. **See** Filing No. 44-13 - Jan. 15, 2003, NTA p. 1 (bearing file stamp). On February 26, 2003, the Chicago IC generated a Notice of Hearing in Removal Proceedings (NOH) to be served by mail to Partida-Ortiz's custodial officer at INS in Omaha, Nebraska. **See** Filing No. 44-14 - Feb. 26. 2003, NOH.[4] The NOH provided a Master hearing would be held on March 13, 2003, in Council Bluffs, Iowa. *Id.*

During Partida-Ortiz's detention in Hastings and prior to the first hearing on March 13, 2003, Partida-Ortiz's mother, Anita Ortiz (Anita), and sister, Maria, consulted with Omaha attorneys, Bart Chavez (Mr. Chavez) and Jason Finch (Mr. Finch). **See** Filing No. 44-23 - Maria Aff. ¶¶ 18-19. Anita and Maria did not hire Mr. Chavez to represent Partida-Ortiz. *Id.* Anita and Maria then met with Mr. Chavez's associate, Mr. Finch. *Id.* at 20. Although. Mr. Finch told Anita and Maria he would "look into things" for Partida-Ortiz, they did not hire Mr. Finch. *Id.* at 20-21. Prior to the March 13, 2003, hearing, Partida-Ortiz had a telephone conversation with Mr. Finch wherein Mr. Finch said he would be "looking into [Partida-Ortiz's] case"; however, Partida-Ortiz never signed a representation agreement with Mr. Finch. **See** Filing No. 51-1 - Partida-Ortiz Aff. ¶¶ 29-31; TR. 77-79, 101.

---

[4]   The February 26, 2003, NOH lists Partida-Ortiz's address as "C/O INS Custody, Omaha, NE 68144"; however, Partida-Ortiz was in custody in Hastings, Nebraska. **Compare** Filing No. 44-11 - Jan. 15, 2003, Warrant, Filing No. 44-12 - Jan. 15, 2003, NCD, and Filing No. 44-13 - Jan. 15, 2003, NTA **with** Filing No. 44-14 - Feb. 26. 2003, NOH.

On March 13, 2003, Partida-Ortiz was taken to a video-conference room to attend his hearing.  *Id.* at 25; TR. 74-75.  An immigration judge and Mr. Finch were present for the hearing.  **See** TR. 74-75, 79-80.  The immigration judge read Partida-Ortiz's charges and told Partida-Ortiz he was subject to deportation because he was charged with an aggravated felony.  **See** TR. 75.  The immigration judge informed Partida-Ortiz that Partida-Ortiz would have thirty days to appeal if he was deported.  *Id.* The immigration judge did "not really" explain the appeal process to Partida-Ortiz.  *Id.* at 76.  Although the immigration judge told Partida-Ortiz that Partida-Ortiz could see the evidence INS had against him, the immigration judge did not inform Partida-Ortiz of how the immigration process functioned or what arguments Partida-Ortiz could make in his defense.  *Id.*

On March 14, 2003, the Chicago IC issued a second NOH for April 14, 2003, in Council Bluffs.  **See** Filing No. 44-15 - Mar. 14, 2003, NOH.  The Mar. 14, 2003, NOH was served by personal service to Partida-Ortiz's custodial officer.  *Id.*[5]  On April 14, 2003, a second hearing was held before the Chicago IC.  **See** Filing No. 44-16 - Apr. 14, 2003, Order of the Immigration Judge.  The presiding immigration judge denied Partida-Ortiz a change in custody.  *Id.* Mr. Finch appeared on Partida-Ortiz's behalf and received the order denying change in custody from the Chicago IC.  *Id.* The order did not indicate whether Partida-Ortiz was present for the hearing.  Following the hearing, the Chicago IC issued a third NOH setting a hearing for April 28, 2003, in Council Bluffs. **See** Filing No. 44-17 - Apr. 14, 2003, NOH.  The certificate of service indicates the Apr. 14, 2003, NOH was delivered to Partida-Ortiz's attorney, Mr. Finch, and INS.  *Id.*

The Chicago IC held the third hearing on April 28, 2003.  **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing.   The presiding immigration judge noted he was in Chicago, Illinois, and Partida-Ortiz was in custody in Hastings, Nebraska.  *Id.* at 2.  Mr. Finch appeared on Partida-Ortiz's behalf in Council Bluffs, Iowa.  *Id.* at 2, 7-8.  Both Mr. Finch and counsel for the government agreed to "waive [Partida-Ortiz's] appearance." *Id.* at 2.  Mr. Finch indicated he had an opportunity to discuss this case with Partida-

---

[5]   The Mar. 14, 2003, NOH lists Partida-Ortiz's address as "C/O INS Custody, Omaha, NE 68144"; however, Partida-Ortiz was in custody in Hastings, Nebraska.  **Compare** Filing No. 44-11 - Jan. 15, 2003, Warrant, Filing No. 44-12 - Jan. 15, 2003, NCD, and Filing No. 44-13 - Jan. 15, 2003, NTA **with** Filing No. 44-15 - Mar. 14, 2003, NOH.

Ortiz.  *Id.*  Mr. Finch entered a guilty plea to the first three allegations set forth in the January 15, 2003, NTA and denied the fourth allegation.  *Id.* at 3.  Specifically, Mr. Finch denied the allegation that Partida-Ortiz committed an aggravated felony.  *Id.*  Mr. Finch informed the immigration judge that Mr. Finch and Partida-Ortiz were working with the state regarding Partida-Ortiz's conviction for cocaine possession.  *Id.* at 3-5.  Mr. Finch noted he was attempting to withdraw Partida-Ortiz's guilty plea to allow the prosecutor to obtain a misdemeanor conviction instead of Partida-Ortiz's current felony conviction.  *Id.* at 4-5.  After hearing Mr. Finch's argument, the immigration judge sustained the aggravated felony allegation on the basis of **Matter of Yanez**.[6]  *Id.* at 6. The immigration judge informed Mr. Finch appeal time was reserved for Partida-Ortiz. *Id.* at 7.  The immigration judge summarized his findings as follows:

> Decision of the immigration judge:  The respondent is a male native and a citizen of Mexico, whose status was adjusted to that of a lawful, permanent resident on September 11, 1989, under Section 245(A)[7] of the Immigration and Nationality Act.
>
> However, the Immigration and Naturalization Service commenced to move the proceedings against the respondent on January 15, 2003, charging him with removability under the above captioned sections of the Immigration and Nationality Act as a consequence of his conviction in the District Court at Douglas County, Nebraska, for the offense of possession of controlled substance (cocaine).
>
> At his removal hearing, the respondent, through counsel, has admitted the factual allegations contained in the notice to appear, and has also conceded removability under Section 237(A)(2)(B)(i).  However, the respondent denies removability under Section 237(A)(2)(A)(iii).
>
> The service has submitted the record of conviction (Exhibit 2), which clearly indicates that the respondent was convicted at Douglas County, Nebraska, on April 10th, 2001, as charged in the notice to appear.
>
> The respondent appears to be seeking collateral relief in order to vacate this conviction and perhaps obtain a modified (lesser) sentence.  This does not, however, appear to affect the finality of the conviction entered on April 10, 2001.

---

[6]  **See In Re Yanez-Garcia**, 23 I. & N. Dec. 390 (BIA 2002).
[7]  The court removed the immigration judge's verbal punctuation.

> Accordingly, I find that respondent's removability under INA [Immigration and Naturalization Act] Section 237(A)(2)(A)(iii) has also been established by virtue of his conviction for possession of a controlled substance, to wit: cocaine.  Footnote, see also matter of Yanez, Y-A-N-E-Z, it's a citation omitted.
>
> Mexico is directed pursuant to the immigration -- Mexico is directed to Section 241B of the act if removal become [sic] necessary.
>
> Notwithstanding the fact that the respondent was a lawful, permanent resident, he does not, at present, appear eligible for any form of relief, including cancelation of removal under INA Section 240A(a) by virtue of his aggravated felony conviction.
>
> The following order will therefore be entered:  Order.  It is ordered that the respondent be removed from the United States to Mexico pursuant to the charges contained in his notice to appear.
>
> (Inaudible) immigration judge, dated April 28, 2003, to the transcriber, now appearing for the record proceeding.  Mr. Finch, I will reserve appeal then for the respondent to May 28th, 2003.   Please make sure that any appeal is received by the board on or before that date, or else it may be considered abandoned.
>
> A copy of this proceeding then will be served on both sides by facsimile and also mail; however, [sic] does not change the 30-day deadline for appeal, which again is May 28, 2003.

*Id.* at 8-11.

The Chicago IC sent Mr. Finch a cover letter and summary of the immigration judge's April 28, 2003, oral order.  **See** Filing No. 44-19 - Apr. 28, 2003, Order of the Immigration Judge.  The order indicated Partida-Ortiz had until May 28, 2003, to appeal the immigration judge's ruling.  *Id.*

In May or June of 2003, Partida-Ortiz overheard a guard at the Hastings Correctional Center wherein the guard stated Partida-Ortiz would be deported.  **See** Filing No. 51-1 - Partida-Ortiz Aff. ¶ 35; TR. 81-82.  On June 2, 2003, INS issued a Warrant of Removal/Deportation against Partida-Ortiz.  **See** Filing No. 44-20 - Jun. 2, 2003, Warrant of Removal/Deportation.  On June 4, 2003, two INS officers witnessed the physical removal and departure of Partida-Ortiz in Laredo, Texas.  *Id.*  After five

days in Mexico, Partida-Ortiz reentered the United States at Tecate, California, near San Diego, California, and was immediately detained by authorities. **See** TR. 84-85.

### B.  Second Removal - Las Vegas Proceedings

On June 9, 2003, INS issued a Warrant for Arrest of Alien (Warrant) for Partida-Ortiz, a Notice of Custody Determination (NCD), and Notice to Appear (NTA). **See** Filing No. 44-26 - Jun. 9, 2003, Warrant; Filing No. 44-27 - Jun. 9, 2003, NCD; Filing No. 44-28 - Jun. 9, 2003, NTA. According to the June 9, 2003, NTA, the INS alleged "[Partida-Ortiz was] an alien present in the United States who ha[d] not been admitted or paroled." **See** Filing No. 44-28 - Jun. 9, 2003, NTA p. 1. The INS alleged:

> 1) [Partida-Ortiz was] not a citizen or national of the United States;
> 2) [Partida-Ortiz was] a native of MEXICO and a citizen of MEXICO;
> 3) [Partida-Ortiz] arrived in the United States at or near Tecate, California, on or about June 9, 2003;
> 4) [Partida-Ortiz was] not then admitted or paroled after inspection by an Immigration Officer.

*Id.* at 1. The INS alleged Partida-Ortiz was subject to removal from the United States based on the following:

> Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

*Id.* The NTA ordered Partida-Ortiz "to appear before an immigration judge of the United States Department of Justice at: EOIR/LVG, 3365 Pepper Ln, Ste. 200, Las Vegas, NV 89120 on 'a date to be set' at 'a time to be set' to show why [Partida-Ortiz] should not be removed from the United States. . . ." *Id.* at 2. Included with the NTA was a document providing Partida-Ortiz with a description of hearing before an immigration judge. *Id.* The description provided Partida-Ortiz with notice he had the right to appeal an adverse decision by an immigration judge. *Id.* Partida-Ortiz was personally served with the Warrant, NTA, and NCD on June 9, 2003. **See** Filing No. 44-26 - Jun. 9, 2003, Warrant; Filing No. 44-28 - Jun. 9, 2003, NTA p. 2; Filing No. 44-27 - Jun. 9, 2003, NCD; TR. 85.

On June 24, 2003, INS filed the June 9, 2003, NTA with the IC in Las Vegas, Nevada.  **See** Filing No. 44-28 - Jun. 9, 2003, NTA p. 1 (bearing file stamp).  On June 25, 2003, the Las Vegas IC generated a NOH to be served on Partida-Ortiz in INS custody in Las Vegas, Nevada.  **See** Filing No. 44-29 - Jun. 25, 2003, NOH.  The NOH provided a Master hearing would be held on July 9, 2003, in Las Vegas, Nevada.  *Id.* There is no evidence a hearing was held on July 9, 2003.  On July 7, 2003, the Las Vegas IC issued a second NOH set for July 16, 2003, in Las Vegas.  **See** Filing No. 44-30 - Jul. 7, 2003, NOH.  The July 7, 2003, NOH does not indicate whether it was served on Partida-Ortiz.  *Id.*

The Las Vegas IC held the second hearing on July 16, 2003.  **See** Filing No. 44-31 - Tr. of Jul. 16, 2003, Hearing.  Partida-Ortiz was present for the hearing and the presiding immigration judge noted Partida-Ortiz proceeded pro se.  *Id.* at 2.  The government was represented by William Price.  *Id.*  The remainder of the hearing proceeded as follows:

> HEARING OFFICER:  Thank you.  Notice was issued in this case on June the 9th of 2003, served in person on that date.
> JUAN PARTIDA-ORTIZ:  I agree.
> HEARING OFFICER:  Okay. And now I'm admitting into evidence this first exhibit, the notice to appear, because it was personally served on you and not on the Court.  You have the right to request a continuance to obtain the services of an attorney representative of your choosing, but at no expense to the government or the states.  If you waive that right, the Court will proceed today.  Do you wish a continuance or do you wish to proceed today, sir?
> JUAN PARTIDA-ORTIZ:  Proceed today.
> HEARING OFFICER:  All right.  We will go through each of the factual allegations in the charge.  The first factual allegation states that you are not a U.S. citizen or U.S. national.  Do you admit or deny that, sir?
> JUAN PARTIDA-ORTIZ:  I admit.
> HEARING OFFICER:  You admit.  The second factual allegation states you're a citizen or national of Mexico.  Do you admit or deny that, sir?
> JUAN PARTIDA-ORTIZ:  Admit.
> HEARING OFFICER:  The third factual allegation states you last arrived in the United States at or near Chihuahua, Arizona, on June the 9th of 2003.

> JUAN PARTIDA-ORTIZ:  (No audible response.)[8]
> HEARING OFFICER:  That's correct, you did that.  The fourth factual allegation states that at the time that you entered the United States, you were (inaudible) inspection by an immigration officer of DHS.  Do you admit that?
> JUAN PARTIDA-ORTIZ:  (No audible response.)[9]
> HEARING OFFICER:  The basis of your admissions to the four factual allegations, the Court will sustain the 212(A)(6), entry without inspection charge.  As I understand it, you wish to designate for removal purposes your native country of Mexico; is that correct, sir?
> JUAN PARTIDA-ORTIZ:  Yes.
> HEARING OFFICER:  Thank you.  Do you wish this Court to issue an order (inaudible) from the United States to Mexico, you waive appeal and accept the decision; is that correct, sir?
> JUAN PARTIDA-ORTIZ:  Yes.
> HEARING OFFICER:  Sir, does this waive appeal?
> WILLIAM PRICE:  Yes, Your Honor.
> HEARING OFFICER: Therefore it's a final decision.
> WILLIAM PRICE:  (Inaudible.)  If there's enough space on the (inaudible) aircraft, you'll be on it tomorrow.  They leave twice a day.  (Inaudible) you'll be on it tomorrow, sir.
> JUAN PARTIDA-ORTIZ:  Thank you.
> WILLIAM PRICE:  Good luck to you.
> JUAN PARTIDA-ORTIZ:  Thank you.

*Id.* at 2-5.

During the hearing before this court, Partida-Ortiz testified he said he wanted to be removed because he "was tired of being in jail and away from [his] kids. . . ."  **See** TR. 89, 99-100.  Partida-Ortiz also testified before this court he understood what it meant to waive appeal although with more information he would not have waived appeal.  *Id.* at 91.  Partida-Ortiz stated he did not have the opportunity to present a defense and no one explained to him what defenses were available.  *Id.* at 90.  Partida-Ortiz said if he had been informed of voluntary departure during the Las Vegas Proceedings, he would have opted for voluntary departure and then attempted to apply for residency in the United States.  *Id.*  If Partida-Ortiz had been denied voluntary departure, Partida-Ortiz testified he was prepared to appeal his case.  *Id.*

---

[8]  Partida-Ortiz testified his response to this question would have been he entered the United States illegally near Tecate, California, and not Chihuahua, Arizona.  **See** TR. 98-99.
[9]  Partida-Ortiz testified this allegation was true, he was not inspected by border patrol or anyone with Immigration and Customs Enforcement.  **See** TR. 99.

On July 16, 2003, the Las Vegas IC provided Partida-Ortiz the July 16, 2003, Order of the Immigration Judge.   **See** Filing No. 44-32 - Jul. 16, 2003, Order of the Immigration Judge.   The order indicated Partida-Ortiz waived appeal.   *Id.*  The order was personally served on Partida-Ortiz.   *Id.* at 2.   On July 17, 2003, INS issued a Warrant of Removal/Deportation against Partida-Ortiz.   **See** Filing No. 44-33 - Jul. 17, 2003, Warrant of Removal/Deportation.   On July 18, 2003, an immigration official witnessed Partida-Ortiz's removal and departure from the United States.   *Id.* at 2.

## IV.   August 21, 2013, Evidentiary Hearing

Sandra, Partida-Ortiz's daughter, testified regarding her relationship with her father before he was arrested and the hardship she endured after he was arrested, imprisoned, and deported.   **See** TR. 21-32.   Enrique, Partida-Ortiz's brother, similarly testified about his observations of Partida-Ortiz as a father and how Partida-Ortiz's arrest, imprisonment, and deportation, negatively affected Partida-Ortiz's family.   *Id.* at 51-59.   Partida-Ortiz testified Sandra and Monica suffered hardship because of his deportation.   *Id.* at 94-96.

Maria, Partida-Ortiz's sister, testified Partida-Ortiz was positively involved with his family prior to his arrest in 2001 and Partida-Ortiz's family experienced difficulties after Partida-Ortiz's arrest, imprisonment, and deportation.   *Id.* at 33-39.   Maria also testified about her contact with Messrs. Chavez and Finch.   *Id.* at 39-47.   Maria explained she met with Mr. Chavez; however, Mr. Chavez did not give her any hope he could help Partida-Ortiz.   *Id.*  Maria did not hire Mr. Chavez to represent Partida-Ortiz.   *Id.*  Maria also met with Mr. Finch who said he would look into Partida-Ortiz's case.   *Id.*  Maria did not hire Mr. Finch to represent Partida-Ortiz.   *Id.*  Maria paid Messrs. Chavez and Finch a $100 consultation fee but did not pay for any other services.   *Id.*  Maria provided Partida-Ortiz with Messrs. Chavez's and Finch's office number in order to allow Partida-Ortiz to contact the lawyers about Partida-Ortiz's case.   *Id.*

Mr. Finch testified he has no information about Partida-Ortiz in his work database, has not seen a file for Partida-Ortiz, and does not remember Partida-Ortiz's case.   *Id.* at 9.   However, Mr. Finch admitted, according to the transcript of the April 28, 2003, hearing for the Omaha Proceedings, he was the representative for Partida-Ortiz.

*Id.* at 12-16.  Mr. Finch testified he does not remember whether he filed a Form EOIR 28, the form an attorney submits to certify representation of a defendant in immigration court.  *Id.* at 10.  Mr. Finch testified generally an attorney has to file a Form EOIR 28 before the judge will allow the attorney to appear on behalf of the defendant; however, there are instances where an attorney could appear without the Form EOIR 28, such as the attorney was retained briefly before the hearing, the form was not processed on time, or the form was in the mail.  *Id.* at 18-19.

## LEGAL ANALYSIS

### I.    Jurisdiction

In ***United States v. Mendoza-Lopez***, 481 U.S. 828, 838-39 (1987), the Supreme Court of the United States recognized an alien may collaterally challenge a prior removal order if he was deprived of his right to judicial review of the underlying removal proceedings.  **See also *United States v. Mendez-Morales***, 384 F.3d 927, 929 (8th Cir. 2004).  Following ***Mendoza-Lopez***, Congress amended 8 U.S.C. § 1326 to define when a prior deportation order may be collaterally attacked in a § 1326 prosecution:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that--
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  Pursuant to 8 U.S.C. § 1326(d), and Eighth Circuit and Supreme Court precedent, this court has jurisdiction to review Partida-Ortiz's removal proceedings.

### II.    Requirements of § 1326(d)

####       A.  Fundamentally Unfair (§ 1326(d)(3))

Partida-Ortiz argues he was entitled to due process of law under the Fifth Amendment throughout his immigration proceedings.[10]  **See** Filing No. 42 - Brief p. 18-42.  Partida-Ortiz contends the government committed fundamental errors during his removal proceedings that deprived him of substantive and procedural due process rights and ultimately rendered his immigration proceedings fundamentally unfair.  **Id.**

"In [the Eighth Circuit], the establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice; an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice."  **United States v. Torres-Sanchez**, 68 F.3d 227, 230 (8th Cir. 1995); **see also Bracic v. Holder,** 603 F.3d 1027, 1032 (8th Cir. 2010).  Partida-Ortiz bears the burden of demonstrating the proceedings contained a fundamental procedural error so as to render them fundamentally unfair.  **See United States v. Martinez-Amaya**, 67 F.3d 678, 681 (8th Cir. 1995).

### 1.  Fundamental Error

Partida-Ortiz argues both substantive and procedural due process errors occurred in the Omaha and Las Vegas Proceedings.  **See** Filing No. 42 - Brief p. 18-42.  Although unclear whether a substantive due process violation would constitute a fundamental error,[11] and although Partida-Ortiz has not shown a substantive due process violation could form the basis of "fundamentally unfair" proceedings under 8 U.S.C. § 1326(d)(3); nevertheless, the court will address Partida-Ortiz's substantive due process claim.

### a.  Procedural Due Process

Partida-Ortiz first argues the government violated his procedural due process right by failing to provide adequate and meaningful notice of his removal hearings as

---

[10]  It is uncontested Partida-Ortiz is protected under the Fifth Amendment.  **See Kwong Hai Chew v. Colding**, 344 U.S. 590, 596 (1953) ("It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment.  He may not be deprived of his life, liberty or property without due process of law."); **Sanchez-Velasco v. Holder**, 593 F.3d 733, 737 (8th Cir. 2010) ("The Fifth Amendment prohibits the government from depriving an alien of his liberty without due process of law.").

[11]  **See Torres-Sanchez**, 68 F.3d at 230 (limiting fundamental unfairness to, in part, a "showing . . . of a fundamental **procedural** error) (emphasis added).

required by 8 U.S.C. § 1229(a)(1)(G)(i).  **See** Filing No. 49 - Brief p. 29-34.  Partida-Ortiz also argues the immigration judge inadequately explained the immigration proceedings.  **Id.** at 35.  Partida-Ortiz contends the immigration judge never read or explained the factual allegations to Partida-Ortiz.  **Id.**  Partida-Ortiz asserts the immigration judge in the Las Vegas Proceedings failed to notify Partida-Ortiz of his eligibility for voluntary departure.  **Id.** at 36.  Additionally, Partida-Ortiz argues he was not advised of his right to counsel.  **Id.** at 37-39.  Lastly, Partida-Ortiz argues he was deprived of his right to participate in his proceedings and present evidence.  **Id.** at 40-43.

### i. Notice

In removal proceedings, an alien must be given written notice containing certain information.  **See** 8 U.S.C. § 1229(a)(1).  Relevant here, an alien must be notified of the "time and place at which the proceedings will be held."  8 U.S.C. § 1229(a)(1)(G)(i).

The government provided Partida-Ortiz sufficient notice in both the Omaha and Las Vegas Proceedings.  In the Omaha Proceedings, the January 15, 2003, NTA personally served on Partida-Ortiz did not include the time and place of Partida-Ortiz's first hearing; however, subsequent notices, which actually set hearings, provided Partida-Ortiz with the time and place of his hearings.  The January 15, 2003, NTA was a preliminary notice that informed Partida-Ortiz removal proceedings had been initiated against him and also explained why he was removable, that he had the opportunity of representation, and how the immigration proceedings would proceed, including a notice Partida-Ortiz had a right to appeal.  **See** Filing No. 44-13 - Jan. 15, 2003, NTA.  It is unreasonable to assume the January 15, 2003, NTA, which had not yet been filed with the Chicago IC, would provide the date a time of a hearing before the Chicago IC.  **See Haider v. Gonzales**, 438 F.3d 902, 908 n.5 (8th Cir. 2006) (stating the initial NTA was not meaningless even though it did not include the date and time of the defendant's removal hearing).  After the government filed the January 15, 2003, NTA, the Chicago IC promptly generated the February 26, 2003, NOH, which included the time and place of Partida-Ortiz's first hearing.

Partida-Ortiz argues he did not receive the February 26, 2003, NOH, setting the hearing for March 13, 2003; however, Partida-Ortiz and his attorney, Mr. Finch, were

present for the March 13, 2003, hearing.  Similarly, although Partida-Ortiz claims he did not receive the March 14, 2003, NOH, his counsel, Mr. Finch, was present for the hearing and argued on Partida-Ortiz's behalf for a change in custody.  **See** Filing No. 44-16 - Apr. 14, 2003, Order.

The Chicago IC served the April 14, 2003, NOH on Mr. Finch, which constitutes sufficient notice.  **See** Filing No. 44-14 - Apr. 14, 2003, NOH.  The court finds service to Partida-Ortiz's counsel, Mr. Finch, was appropriate because Mr. Finch represented Partida-Ortiz in the Omaha Proceedings.  Partida-Ortiz contends he never retained Mr. Finch or agreed to Mr. Finch's representation; however, the evidence in the record indicates Mr. Finch represented Partida-Ortiz.  Mr. Finch appeared on Partida-Ortiz's behalf on three occasions:  the initial hearing on March 13, 2003; the custody hearing on April 14, 2003; and the removal proceedings on April 28, 2003.  **See** TR. 75; Filing No. 44-16 - Apr. 14, 2003, Order; Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing.  If Partida-Ortiz objected to Mr. Finch's representation, Partida-Ortiz had an opportunity to object during the initial hearing on March 13, 2003.  There is no record of such objection.  Although there is no evidence a Form EOIR 28 was filed, the Chicago IC recognized Mr. Finch represented Partida-Ortiz, thus such an omission was apparently not fatal.  **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing ("THE COURT:  Okay.  Mr. Finch, you had such opportunity then to discuss this case with your client?  MR. FINCH: Yes, Your Honor.").

Mr. Finch demonstrated in-depth knowledge of Partida-Ortiz's circumstances, he attempted to obtain a change in custody and, during the removal proceedings, Mr. Finch explained to the immigration judge that Mr. Finch and Partida-Ortiz were working with the state to modify Partida-Ortiz's felony conviction and after modification, would likely appeal the immigration judge's order.  It is unlikely Mr. Finch would be privy to this information or argue on Partida-Ortiz's behalf if he was not representing Partida-Ortiz.  Although Partida-Ortiz and Mr. Finch may not remember the attorney-client relationship or the circumstances surrounding that relationship, the transcript from the April 28, 2003, hearing speaks for itself:  Mr. Finch represented Partida-Ortiz.  The court finds the transcripts of the hearings are more persuasive than recent testimony before this court.

Partida-Ortiz also received sufficient notice of hearings in the Las Vegas Proceedings.  Again, the June 9, 2003, NTA did not provide the time and place of Partida-Ortiz's hearing, but the NTA was served before the government filed the NTA with the Las Vegas IC.  Upon filing the NTA, the Las Vegas IC served Partida-Ortiz with notice of the time and place of his hearings.  The July 7, 2003, NOH, which set a hearing for July 16, 2003, has a blank certificate of service; however, Partida-Ortiz was nevertheless present for the July 16, 2003, hearing.  **See** Filing No. 44-31 - Tr. of Jul 16. 2003, Hearing.

Partida-Ortiz testified he was not provided the July 7, 2003, NOH, therefore he did not have time to prepare for the hearing; however, Partida-Ortiz's testimony during the July 16, 2003, hearing, and the hearing held before this court on August 28, 2013, contradict Partida-Ortiz's statement.   The Las Vegas immigration judge provided Partida-Ortiz an opportunity for a continuance but Partida-Ortiz agreed to continue with the removal proceedings.  **See** Filing No. 44-21 - Tr. of Jul 16. 2003, Hearing.  Partida-Ortiz testified before this court he said he wanted to be removed during the July 16, 2003, hearing because he "was tired of being in jail and away from [his] kids. . . ."  **See** TR. 89, 99-100.   Therefore it appears Partida-Ortiz fully intended to complete the immigration proceedings without delay in order to end the immigration proceedings.  If a problem existed with receiving notice of the July 16, 2003, hearing, Partida-Ortiz had ample opportunity to raise the issue, instead he chose to participate in the hearing and be removed.  The court finds Partida-Ortiz was properly notified of all hearings during the Omaha and Las Vegas Proceedings.

Lastly, it bears mentioning Partida-Ortiz cites several statutes, regulations, and Office of the Chief Immigration Judge (OCIJ) Interim Operating Policies and Procedures Memorandum (IOPPM) in support of his argument the law strongly favors personal service.  **See** Filing No. 42 - Brief p. 30-34 (**citing** 8 U.S.C. § 1229(a)(2)(A),[12] 8 C.F.R. § 3.18(b) (2003); 8 U.S.C. § 1229(a)(1); IOPPM No. 97-2; and IOPPM No. 04-06).

---

[12] Section 1229(a)(2) pertains to notices of a change in time or place of proceedings.  The record does not show that hearings were changed after set by the ICs; therefore, this section does not appear applicable.  However, this section is illustrative in that it establishes service in person is not the only method of service, as Partida-Ortiz suggests.  **See** 8 U.S.C. § 1229(a)(2)(A) ("or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any"); **see also** 8 U.S.C. § 1229(a)(1) (same language).

Although personal service is favored, service by mail is not prohibited, and when done properly, is sufficient according to the statutes, regulations, and IOPPMs Partida-Ortiz cites.  **See, e.g.,** 8 U.S.C. § 1229(a)(1).

### ii. Explanation of Charges and Proceedings

Partida-Ortiz argues the immigration judges never read and explained the factual allegations and charges in the notices to appear or explained available discretionary relief.  **See** Filing No. 42 - Brief p. 35-36.  The immigration judges properly read and explained the charges to Partida-Ortiz in accordance with 8 C.F.R. § 240.10(a)(6) (2003).[13]  In the Omaha Proceedings, during Partida-Ortiz's first hearing on March 13, 2003, the immigration judge read Partida-Ortiz's charges and informed Partida-Ortiz he would have to opportunity to appeal.  **See** TR. 75.  Additionally, during the hearing on April 28, 2003, Mr. Finch, counsel for Partida-Ortiz, waived the explanation and reading of the charges.  **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing.  In the Las Vegas Proceedings, the immigration judge recited each allegation against Partida-Ortiz.  **See** Filing No. 44-31 - Tr. of Jul 16. 2003, Hearing ("HEARING OFFICER:  All right.  We will go through each of the factual allegations in the charge.").  The immigration judges clearly informed Partida-Ortiz of the charges against him.

Additionally, with regard to informing Partida-Ortiz of his potential eligibility for discretionary relief, Partida-Ortiz does not have a protected liberty or property interest in forms of discretionary relief.  **See *Garcia-Mateo v. Keisler***, 503 F.3d 698, 700 (8th Cir. 2007) ("Because [an alien] has no constitutionally protected liberty or property interest in the discretionary relief . . . [the alien] cannot establish that [he or] she had a right to due process in the proceedings to obtain this relief."); **see also *United States v. Santiago-Ochoa***, 447 F.3d 1015, 1020 (7th Cir. 2006) ("Since ***Mendoza-Lopez*** was decided, however, a majority of circuits have rejected the proposition that there is a constitutional right to be informed of eligibility for—or to be considered for—discretionary relief.") (**citing *Escudero–Corona v. INS***, 244 F.3d 608, 615 (8th Cir. 2001) and collecting cases).  In support of his argument the immigration judge was required to inform

---

[13] "In a removal proceeding, the immigration judge shall: . . . (6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language[.]"

Partida-Ortiz of eligibility for discretionary relief, Partida-Ortiz cites exclusively to United States Court of Appeals for the Ninth Circuit, which expresses the minority view that an immigration judge has a duty to inform an alien of "a reasonable possibility that the petitioner may be eligible for [discretionary] relief."   **See *United States v. Lopez-Velasquez***, 629 F.3d 894, 901 (9th Cir. 2010).   However, Partida-Ortiz fails to include the following sentence from ***Lopez-Velasquez***:

> This duty did not require the IJ to inform Lopez-Velasquez of relief for which ***he was not then eligible*** and for which he would become eligible only with a change in law and the passage of eight months.   Rather, an IJ's duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief ***at the time of the hearing***.

**See *id.*** (emphasis added).   The Ninth Circuit in ***Lopez-Velasquez*** ultimately ruled, although Lopez-Velasquez was not informed of his eligibility for discretionary relief, there was no due process error because, at the time of Lopez-Velasquez's removal proceedings, there was no substantive basis for pursuing an appeal.   ***Id.***   Thus, even the Ninth Circuit's opinion in ***Lopez-Velasquez*** supports this court's finding that there was no procedural due process violation if the immigration judges did not inform Partida-Ortiz of certain forms of discretionary relief.   At the time of Partida-Ortiz's removal proceedings, he was not eligible for discretionary relief because he had committed a felony and, under ***In Re Yanez-Garcia*** and ***Briones-Mata***, such a felony constituted an aggravated felony, rendering Partida-Ortiz ineligible for discretionary forms of relief.   During the Omaha Proceedings, the immigration judge even noted this fact.   **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing ("Notwithstanding the fact that the respondent was a lawful, permanent resident, he does not, at present, appear eligible for any form of relief, including cancelation of removal under INA Section 240A(a) by virtue of his aggravated felony conviction.").   Therefore, the court finds no due process violation if the immigration judges did not inform Partida-Ortiz of discretionary forms of relief.

### iii. Right to Counsel

Partida-Ortiz argues he was not informed of his right to counsel during his Omaha Proceedings as required under 8 C.F.R. § 240.10(a)(1) (2003).[14]  **See** Filing No. 42 - Brief p. 37-40.  As explained above, Mr. Finch represented Partida-Ortiz during the Omaha Proceedings.  According to the Federal Regulations:

> An appearance shall be filed on the appropriate form by the attorney or representative appearing in each case. . . . When an appearance is made by a person acting in a representative capacity, his or her personal appearance or signature ***shall constitute a representation that under the provisions of this chapter he or she is authorized and qualified to represent***.  Further proof of authority to act in a representative capacity may be required.

**See** 8 C.F.R. § 292.4(a) (emphasis added).  Although the record does not include a Form EOIR-28, Mr. Finch's appearance at Partida-Ortiz's first hearing on March 13, 2003, qualified as a representation that he represented Partida-Ortiz.  An appearance in person is adequate, under 8 C.F.R. § 292.4(a), and additional filings, such as a Form EOIR 28, is not required unless ordered.  With regard to the Las Vegas Proceedings, the immigration judge informed Partida-Ortiz of his right to counsel at the beginning of the hearing, but Partida-Ortiz chose to decline representation and proceed pro se  **See** Filing No. 44-31 - Tr. of Jul 16. 2003, Hearing.  The court finds no due process violation.

### iv. Right to Participate

Partida-Ortiz argues he was denied his right to participate in the immigration proceedings and to have a decision based on evidence presented.  **See** Filing No. 42 - Brief p. 40-43.  Partida-Ortiz, through his counsel, was provided the opportunity to present evidence during the Omaha Proceedings.  In fact, during the removal hearing, Mr. Finch argued the merits of the aggravated felony allegation and represented he and Partida-Ortiz sought modification of Partida-Ortiz's felony conviction.  **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing.  Although Partida-Ortiz was not present for the

---

[14] "In a removal proceeding, the immigration judge shall: . . . (1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings and require the respondent to state then and there whether he or she desires representation[.]"

hearing on April 28, 2003, he waived his presence through counsel.[15]   The immigration judge confirmed with the parties that Partida-Ortiz waived his appearance before proceeding with the hearing.   **See** *id.*   Partida-Ortiz has not established such waiver was improper.   In the Las Vegas Proceedings, Partida-Ortiz chose not to present evidence even though he had the opportunity.   At no time did the immigration judges deny Partida-Ortiz the opportunity to be heard or to present evidence.   Instead, Partida-Ortiz chose to proceed with the proceedings and obtain removal.   Partida-Ortiz cannot now claim a denial of his right to participate when he made the decision in the Las Vegas Proceedings not to participate or present evidence.   The court finds no due process violation.

### b. Substantive Due Process

Partida-Ortiz argues the determination in the Omaha Proceedings that his felony conviction for possession of cocaine constituted an **aggravated** felony violated his fundamental right to stay in the United States and all rights associated with his liberty interests.   **See** Filing No. 42 - Brief at 21-28 (**citing** *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) ("Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); *Saenz v. Roe*, 526 U.S. 489, 500 (1999) (recognizing the "right to travel"); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (recognizing the "right of the individual . . . to engage in any of the common occupations of life [and to] establish a home[.]")).   Partida-Ortiz essentially argues his conviction for possession of a controlled substance, cocaine, was not an aggravated felony for immigration purposes because, although it was a felony under Nebraska law, it would not have qualified as a felony under federal law.   *Id.*

Partida-Ortiz's challenge against the finding he committed an aggravated felony requires analysis of the law at the time the finding was made and the law as it currently stands.   On October 25, 1994, Congress expanded the INA's definition of "aggravated felony" to include, in part:   "illicit trafficking in a controlled substance (as defined in

---

[15]   "The proceeding may take place . . . where agreed to by the parties, in the absence of the alien[.]"   **See** 8 U.S.C. § 1229a(b)(2)(A)(ii).

section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)."  Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305 (codified as amended at 8 U.S.C. § 1101(a)(43)(B) (Oct. 5, 1997)).  The Controlled Substances Act (CSA) defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  21 U.S.C. § 802(6).  Cocaine is listed as a schedule II substance.  **See** 21 U.S.C. § 812 (Schedule II)(a)(4).  "Drug trafficking crime" is defined as "any felony punishable under the [CSA] (21 U.S.C. § 801 et seq.)" or under either of two other federal statutes having no bearing on this case.  18 U.S.C. § 924(c)(2).  This was the law during Partida-Ortiz's immigration proceedings and continues to be the law today.

At the time of Partida-Ortiz's immigration proceedings, the Board of Immigration Appeals (BIA), the administrative body charged with interpreting and applying immigration laws, determined the case of Ismal Yanez-Garcia.  **See *In Re Yanez-Garcia***, 23 I. & N. Dec. 390 (BIA 2002).  In ***In Re Yanez-Garcia***, the BIA addressed whether a state drug offense constituted a drug trafficking crime such that it may be considered an "aggravated felony" under the INA.  **See *id.***  The BIA held

> [I]n those circuits that have spoken, the determination whether a state drug conviction constitutes a "drug trafficking crime" under § 924(c)(2), and therefore an aggravated felony under section 101(a)(43)(B) of the Act, shall be made by reference to applicable circuit law, and not by reference to any legal standard articulated by this Board.

*Id.* at 396-97.  In the Eighth Circuit, in ***United States v. Briones-Mata***, 116 F.3d 308, 309 (8th Cir. 1997), the court concluded "the definitions of the terms at issue indicate that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the CSA." **See also *Tostado v. Carlson***, 437 F.3d 706, 709 (8th Cir. 2006) (relying on ***Briones-Mata*** to conclude a state-law drug conviction was an aggravated felony for INA purposes).

Applying ***In Re Yanez-Garcia*** and ***Briones-Mata***, the immigration judge in Partida-Ortiz's Omaha Proceedings sustained the aggravated felony allegation because Partida-Ortiz was convicted of a felony in Nebraska.

In 2006 the Supreme Court decided ***Lopez v. Gonzales***, 549 U.S. 47 (2006).  In ***Lopez***, the defendant became a legal permanent resident in 1990.  ***Lopez***, 549 U.S. at 51.  In 1997, Lopez was arrested on state charges in South Dakota, pleaded guilty to aiding and abetting another person's possession of cocaine, and was sentenced to five years imprisonment.  ***Id.***  After his release, INS began removal proceedings against Lopez on two grounds:  that his state conviction was a controlled substance violation and was for an aggravated felony.  ***Id.***  The immigration court, following ***In Re Yanez-Garcia*** (announcing that BIA decisions would conform to the applicable Circuit law) and ***Briones-Mata*** (holding state felony possession offenses are aggravated felonies), ruled Lopez's drug crime was an aggravated felony because it was a felony under state law. ***Id.*** at 51-52.  The BIA denied Lopez's application for cancellation of removal on the basis that Lopez's aggravated felony rendered him illegible and the Eighth Circuit affirmed the BIA's decision to deny and remove Lopez.  ***Id.*** at 52.  The Supreme Court granted certiorari to consider, for purposes of Lopez's deportation proceedings under immigration law, "whether conduct made a felony under state law but a misdemeanor under the Controlled Substances Act [was] a 'felony punishable under the Controlled Substances Act.' 18 U.S.C. § 924(c)(2)."  ***Id.*** at 50.

The Court held "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."  ***Id.*** at 60.  The court based its decision on the plain meaning of the words in the statutes.  ***Id.*** at 54-60.  The court noted the term "drug trafficking crime" meant "any felony punishable under the Controlled Substances Act."  ***Id.***  The Court noted courts broadly interpreted "felony" to include state and federal felonies thus any felony would constitute a drug trafficking crime as long as the felony was punishable under the CSA.  ***Id.***  The Court however determined "punishable under the Controlled Substances Act" modified the term "felony" such that the phrase should be read together to mean "any drug crime punishable as a felony under the Controlled Substances Act."  ***Id.***  Because Lopez's state offense, mere drug possession, was punishable as a misdemeanor under federal law, rather than as a felony, the offense could not be treated as a felony punishable under the CSA and could not constitute an aggravated felony.  ***Id.***

Subsequently, the Eighth Circuit, in *Tostado v. Carlson*, 481 F.3d 1012, 1015 (8th Cir. 2007), applied *Lopez's* ruling and determined the defendant's crimes for unlawful possession of cocaine and unlawful possession of cannabis, misdemeanors under the CSA, did not constitute drug trafficking crimes and therefore the defendant had not been convicted of aggravated felonies. The Eighth Circuit in *Tostado* resolved Tostado's habeas petition by remanding the action back to the BIA for consideration of Tostado's application for cancellation of removal. *Id.*

In accordance with *Lopez* and *Tostado*, the court finds Partida-Ortiz's crime, possession of cocaine, did not constitute a "drug trafficking crime" thus it was not an aggravated felony as the crime was not punishable as a felony under the CSA. Although the immigration judge properly followed the law at the time of Partida-Ortiz's Omaha Proceedings, such a decision is no longer correct. However, the court's inquiry does not end here.

This matter is not before the court on a petition for habeas relief challenging a removal order like in *Tostado*, wherein the court remanded for further proceedings. That option is not available for this court. Instead, Partida-Ortiz collaterally challenges his prior removal proceedings under 8 U.S.C. § 1326(d) which requires a showing, in part, that Partida-Ortiz's proceedings were fundamentally unfair. As stated above, the court doubts whether a substantive due process violation qualifies as a "fundamental procedural error." Regardless of whether the court finds a substantive due process violation,[16] the court finds Partida-Ortiz was not subject to a fundamental procedural error, as noted above, and did not suffer prejudice or exhaust his administrative remedies as discussed below.

## 2. Prejudice

Partida-Ortiz argues he suffered prejudice as a result of deportation and he was willing to present evidence he was qualified for cancellation of removal or voluntary

---

[16] In order to show a substantive due process violation, Partida-Ortiz would be required to show "one or more fundamental constitutional rights" were violated **and** "that the conduct of the executive official was shocking to the contemporary conscience." *White v. Smith*, 696 F.3d 740, 754 (8th Cir. 2012) (internal citation omitted). Partida-Ortiz has not shown the immigration judge's ruling that Partida-Ortiz committed an aggravated felony, which was in accordance with the law at the time of Partida-Ortiz's Omaha Proceedings, "shocks the conscience." Failure to anticipate a change in the law hardly shocks the conscience.

departure and would have merited a favorable exercise of discretion in support of both forms of relief. **See** Filing No. 42 - Brief p. 43-45. "Prejudice in this context means 'a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'" ***United States v. Mendez-Morales***, 384 F.3d 927, 931-32 (8th Cir. 2004) (**quoting** ***United States v. Perez-Ponce***, 62 F.3d 1120, 1122 (8th Cir. 1995)). If the immigration judge in the Omaha Proceedings had not considered Partida-Ortiz's crime as an aggravated felony, Partida-Ortiz would have been eligible for discretionary forms of relief. However, the Eighth Circuit has rejected the notion that the deprivation of the opportunity for discretionary relief constitutes fundamental unfairness in violation of due process. **See** ***Jamieson v. Gonzales***, 424 F.3d 765, 768 (8th Cir. 2005) (holding inability to seek discretionary relief does not result in a violation of due process); ***Etchu-Njang v. Gonzales***, 403 F.3d 577, 585 (8th Cir. 2005) (holding an alien can have no constitutionally protected liberty interest in such discretionary relief); ***Nativi-Gomez v. Ashcroft***, 344 F.3d 805, 809 (8th Cir. 2003) ("However broadly and amorphously the concept of constitutionally protected liberty interests has been defined within procedural-due-process jurisprudence, it does not include statutorily created relief that is subject to the unfettered discretion of a governmental authority.").

Both cancellation of removal and voluntary departure are subject to discretion. **See** ***Pinos-Gonzalez v. Mukasey***, 519 F.3d 436, 441 (8th Cir. 2008) ("Because [an alien] has no constitutionally protected liberty or property interest in the discretionary relief of cancellation of removal, he cannot establish a due process right in the proceedings to obtain that relief."); ***Garcia-Mateo v. Keisler***, 503 F.3d 698, 700 (8th Cir. 2007) ("Voluntary deportation 'is a form of relief that is available only in the Attorney General's discretion.'"). Therefore, assuming the immigration judge disregarded ***In Re Yanez-Garcia*** and ***Briones-Mata***, which were the prevailing law at the time of Partida-Ortiz's immigration proceedings, the immigration judge ***may*** have granted a discretionary form of relief. There is no basis to support the argument Partida-Ortiz would not have been deported but for the finding Partida-Ortiz committed an aggravated felony. For this reason, Partida-Ortiz did not suffer prejudice.

## B. Exhaustion of Administrative Remedies and Opportunity for Judicial Review (§ 1326(d)(1) and (2))

Partida-Ortiz argues he never knew he had administrative remedies to exhaust. **See** Filing No. 42 - Brief p. 46. Although the NTA advised Partida-Ortiz of his right to appeal, Partida-Ortiz contends such a right was not explained. *Id.* Additionally, Partida-Ortiz argues the immigration courts failed to maintain an accurate record, which diminished Partida-Ortiz's ability to seek administrative and judicial review. *Id.* at 47-51.

"To satisfy the exhaustion prong of § 1326, an alien must have filed a motion to reopen, appealed to the [BIA], and pursued all other administrative remedies available to him." *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010). Partida-Ortiz's argument that he did not know he had administrative remedies to exhaust is not persuasive. In both the Omaha Proceedings and the Las Vegas Proceedings, Partida-Ortiz was provided the opportunity to seek administrative remedies or appeal.

Partida-Ortiz was clearly aware of his right to seek administrative remedies in the Omaha Proceedings. Mr. Finch expressed to the immigration judge that Partida-Ortiz would appeal after modifying Partida-Ortiz's felony conviction to a misdemeanor. **See** Filing No. 44-18 - Tr. of Apr. 28, 2003, Hearing.[17] Through counsel Partida-Ortiz was aware of the available administrative remedies and his right to appeal. The fact that Partida-Ortiz chose not to avail himself of the available remedies does not relieve him of his § 1326(d)(1) duty to exhaust.

In the Las Vegas Proceedings, Partida-Ortiz knowingly chose to waive his right to appeal, and such waiver shows he failed to exhaust his administrative remedies. **See** *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) ("An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)."). Partida-Ortiz was familiar with immigration proceedings and opportunities for review, as he had prior experience with removal proceedings when he was represented by counsel, and chose to waive appeal because he wanted to be removed as he "was tired of being in jail and away from [his]

---

[17] "MR. FINCH: We're going to meet with the prosecutor and discuss the case with them, and . . . that the plea be -- the guilty plea be withdrawn, and allow him to pursue the charge with a resulting misdemeanor rather than a felony conviction. . . . THE COURT: And in the event that there is essentially a vacating of the judgment and a replea for his resentence, then you can just come via either a motion to reopen or file it with the board[.] MR. FINCH: That's fair enough."

kids. . . ."  **See** TR. 89, 99-100.  Partida-Ortiz's current argument, that he would have sought administrative remedies and appealed, is inconsistent with his testimony before this court.  Partida-Ortiz testified he knew what it meant to waive appeal and he wanted the immigration proceedings finished.  Such facts weigh in favor of finding Partida-Ortiz knowingly waived his right to appeal.  Making a decision Partida-Ortiz regrets, i.e., waiving appeal, does not establish he was uninformed of administrative remedies or right to appeal.

In addition to failing to exhaust his administrative remedies and satisfy § 1326(d)(1), Partida-Ortiz also failed to demonstrate he was deprived of the opportunity for judicial review under § 1326(d)(2).  Partida-Ortiz made no attempt to demonstrate habeas relief was unavailable to him.  **See** *United States v. Mendez-Morales*, 384 F.3d 927, 931 (8th Cir. 2004) ("One such alternative means would be a petition for a writ of habeas corpus[.]").

## CONCLUSION

Partida-Ortiz fails to carry his burden to satisfy the three-part conjunctive requirements of 8 U.S.C. § 1326(d) to successfully collaterally attack his deportation proceedings.  Partida-Ortiz did not exhaust his administrative remedies, he was not denied judicial review, and the orders of removal were not fundamentally unfair because no fundamental procedural error occurred and Partida-Ortiz suffered no prejudice.  Accordingly, Partida-Ortiz's motion to dismiss and suppress should be denied.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that**:

Partida-Ortiz's Motion to Dismiss Indictment and Suppress Evidence of Prior Removal (Filing No. 30) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the

time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 3rd day of October, 2013.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge